SAWMILL BROOK RACING ASSOCIATION, INC.
*v.* BOSTON REALTY ADVISORS,
INC., ET AL.
(13140)

Dupont, C. J., and Spear and Hennessy, Js.

Argued March 16—decision released September 19, 1995

*Edward L. Marcus*, with whom, on the brief, was *Diane M. Lord*, for the appellant (plaintiff).

*Frank C. White, Jr.*, for the appellees (defendant Mattabassett Group, Inc., et al.).

SPEAR, J. The dispositive issue in this case is whether the trial court had subject matter jurisdiction over the plaintiff's application to confirm an arbitration award, where two of the four parties involved in a real estate transaction did not sign the contract that contained an agreement to arbitrate. The trial court dismissed the application, ruling that the lack of signatures deprived the arbitrators of authority and, consequently, the court

lacked subject matter jurisdiction. We reverse the judgment of the trial court.

The factual and procedural history of the case is as follows. The plaintiff, Sawmill Brook Racing Association, Inc. (Sawmill),[1] and the named defendant, Boston Realty Advisors, Inc. (Boston Realty), signed an agreement whereby Boston Realty, or its nominee, agreed to purchase certain property from Sawmill for a price of $5,000,000. The defendant, Mattabassett Group, Inc. (Mattabassett), took title to the property as Boston Realty's nominee. The contract contained a clause that provided an additional $1,000,000, to be added to the purchase price if the buyer obtained the necessary approvals from the city of Middletown for the development of at least 500,000 square feet of office and retail space or 500 mixed use units consisting of housing, office and retail space. Robert Mooney signed the agreement on behalf of Sawmill as its president. He also signed his consent and agreement to the terms of the contract in his capacity as a creditor and a stockholder of Sawmill. The defendant Dennis Stackhouse, president of Boston Realty and Mattabassett, signed the agreement on behalf of Boston Realty. The contract also contained a provision that allowed the buyer to offset against the $1,000,000 increase in the purchase price "the full extent of any and all indebtedness which is then outstanding from Ronald H. Mooney in favor of either Boston Realty Advisors, Inc., or Dennis Stackhouse or their respective heirs, executors or assigns." The approvals that would have entitled Sawmill to an additional $1,000,000 were not obtained.

Pursuant to the contract,[2] Sawmill demanded arbitration of its claim that Boston Realty and Mattabassett

---

[1] Sawmill is a debtor in possession pursuant to a bankruptcy petition.

[2] The arbitration clause of the contract provided in pertinent part: "The buyer and the seller agree that should any matter addressed by this agreement be incapable of voluntary resolution by them, said matter shall,

had breached the contract by failing to use their best efforts to obtain the approvals that would have triggered the $1,000,000 increase in the purchase price. Stackhouse and Mattabassett filed a counterclaim in the arbitration proceedings seeking relief pursuant to the contract, which was denied by the arbitrators. Mattabassett also filed a motion to dismiss a declaratory judgment action brought by Sawmill on the ground that all issues regarding the contract were subject to arbitration. The arbitration hearings spanned a period of approximately three years and resulted in an award in favor of Sawmill against Boston Realty and Mattabassett "in the amount of one million dollars plus interest at the rate of 10 percent from April 13, 1991, to the date of payment." The arbitrators also found that "three notes issued by Ronald Mooney in favor of Dennis Stackhouse . . . are declared to be null and void and of no force and effect." The arbitrators finally ordered that certain Sawmill stock that was pledged as security for the notes be returned to Mooney.

Sawmill moved to confirm the award in the Superior Court. Boston Realty failed to appear, but Mattabassett and Stackhouse appeared and moved to dismiss the application and vacate the award. The trial court dismissed the application to confirm the award, ruling that the court had no subject matter jurisdiction as the arbitrators had no authority to render an award because Mattabassett and Stackhouse had not signed an agreement to arbitrate. The trial court ruled that because no one had filed a motion to correct, it could not separate out the claim against Boston Realty, a signatory to the agreement, and enter a "piecemeal con-

at buyer's sole election, either be determined by appropriate proceedings in the United States Bankruptcy Court for the District of Connecticut to the extent it maintains jurisdiction with respect thereto or be submitted to and resolved by arbitration pursuant to the commercial arbitration rules of the American Arbitration Association."

firmation." Sawmill filed a motion to articulate that requested that the trial court confirm the arbitration award as to Boston Realty and Mattabassett. In its articulation, the trial court explained that the arbitrators had no jurisdiction over Mattabassett because it had not signed the contract and a "selective confirmation" of the award as to Boston Realty might affect "other matters properly before the arbitrators" or "put the award in such imbalance that it would topple the scales of justice." Sawmill appeals from the judgment dismissing its application to confirm the award. Other facts will be discussed as necessary.

## I

Sawmill first claims that the motion to dismiss filed by Mattabassett and Stackhouse was improper because General Statutes § 52-420 (b)[3] requires that motions to vacate, modify or correct an award be made within thirty days of the notice of the award, and the motion to dismiss here was filed beyond the thirty day period.

It is axiomatic that subject matter jurisdiction can be raised at any time. *Gagnon* v. *Planning Commission*, 222 Conn. 294, 297, 608 A.2d 1181 (1992); *Gaudio* v. *Gaudio*, 23 Conn. App. 287, 295, 580 A.2d 1212, cert. denied, 217 Conn. 803, 585 A.2d 471 (1990). "The authority of the arbitrator is a subject matter jurisdiction issue, and as such it may be challenged any time . . . ." *Bennett* v. *Meader*, 208 Conn. 352, 364, 545 A.2d 553 (1988). Therefore, the motion to dismiss for lack of subject matter jurisdiction was properly heard by the trial court.

## II

Sawmill next asserts that the trial court improperly dismissed its application to confirm as to Boston Realty

---

[3] General Statutes § 52-420 (b) provides: "No motion to vacate, modify or correct an award may be made after thirty days from the notice of the award to the party to the arbitration who makes the motion."

because it did in fact sign the contract that contained the agreement to arbitrate. Furthermore, Boston Realty failed to appear in the trial court to object to the application. We agree with Sawmill.

There is no question that Boston Realty signed the contract that contained the agreement to arbitrate and that no appearance was filed in the trial court on its behalf. Because the writing provision contained in General Statutes § 52-408[4] was completely satisfied, the trial court had subject matter jurisdiction. The trial court's articulation stating in effect that it could not selectively confirm the award as to Boston Realty does not alter the granting of the motion to dismiss for lack of subject matter jurisdiction. "An articulation is not an opportunity for a trial court to substitute a new decision nor to change the reasoning or basis of a prior decision." (Internal quotation marks omitted.) *Neri* v. *Neri*, 35 Conn. App. 812, 818, 647 A.2d 1, cert. denied, 231 Conn. 916, 648 A.2d 154 (1994); *Matka Corp.* v. *Automated Material Handling, Inc.*, 34 Conn. App. 723, 725, 643 A.2d 276 (1994). The trial court improperly dismissed the application as to Boston Realty.

## III

Sawmill next claims that Stackhouse and Mattabassett are bound by the contract that contains the agreement to arbitrate despite the fact that they did not sign the contract.[5] The trial court correctly stated that arbitration is a creature of contract and there must be an express agreement to arbitrate in order for the

[4] General Statutes § 52-408 provides in pertinent part: "An agreement in any written contract, or in a separate writing executed by the parties to any written contract, to settle by arbitration any controversy thereafter arising out of such contract . . . shall be valid, irrevocable and enforceable . . . ."

[5] Although Stackhouse was the president of Mattabassett and Boston Realty, he did not sign the agreement on behalf of Mattabassett, nor did he sign it in his individual capacity.

arbitrators to have authority and the court to have jurisdiction. *Bennett* v. *Meader*, supra, 208 Conn. 364. We disagree, however, with the trial court's legal conclusion that Stackhouse and Mattabassett were not parties to, and therefore not bound by, the contract that contained the arbitration clause.

The trial court relied principally on *Bennett* in holding that it did not have subject matter jurisdiction. In *Bennett*, the plaintiffs withdrew a personal injury action after an oral agreement with the defendant's insurer to arbitrate the claim. The arbitrator awarded damages in the amount of $5110.20, and the plaintiffs moved to vacate the award. The trial court vacated the award on the ground that § 52-408 requires that an agreement to arbitrate must be in writing to be enforceable. In affirming the trial court, our Supreme Court held that "only written agreements to arbitrate are valid. Oral agreements are not included, implicitly or explicitly, in the description of valid arbitration agreements" contained in § 52-408. Id., 359.

In *Bennett*, the Supreme Court specifically referred to *Schwarzschild* v. *Martin*, 191 Conn. 316, 464 A.2d 774 (1983), as clarifying the requirement of a writing pursuant to § 52-408. In *Schwarzschild*, the arbitration agreement was contained in an addendum to a note. The arbitration addendum was signed by the defendants but was not signed by the plaintiff. The Supreme Court held that the agreement satisfied the writing requirement of § 52-408. *Schwarzschild* v. *Martin*, supra, 321. The court stated that "[n]owhere in the statute is found the specific requirement urged on us by the defendant that the contract be signed by both parties. The statute requires only that the agreement between the parties be contained in a 'written contract' or 'separate writing'; this requirement has been resolved in the plaintiff's favor by both the arbitrators and the trial court. We find no error in this conclusion." Id., 321. The fact that

it was the defendant who challenged the award, even though he signed the addendum and petitioned for an order directing the parties to proceed to arbitration, was of "paramount importance" to the court in resolving the issue. Id. The court stated that "[o]ne enjoying rights is estopped from repudiating dependent obligations which he has assumed; parties cannot accept benefits under a contract fairly made and at the same time question its validity. . . . *In the absence of a statute requiring a signature . . . parties may become bound by the terms of a contract, even though they do not sign it, where their assent is otherwise indicated,* such as by the acceptance of benefits under the contract." (Citation omitted; emphasis added; internal quotation marks omitted.) Id., 321–22. The court ruled: "We therefore hold that a party who signs an arbitration agreement, petitions a court for arbitration, then participates in the arbitration proceedings may not later avoid his agreement because of a claim that the other party did not sign the agreement." Id., 322.

The present case is unlike *Bennett,* where the parties had no writing whatsoever. It is, however, factually similar to *Schwarzschild.*

*Schwarzschild* and the present case differ in only three respects. First, it does not appear that anyone ever petitioned the Superior Court for an order directing the parties to proceed to arbitration. Second, the parties objecting to the award, Mattabassett and Stackhouse, did not sign the agreement. Third, Mattabassett and Stackhouse did not initiate the arbitration proceedings. These differences are legally insignificant in our view. We will discuss the first and third differences together.

A petition to the Superior Court for an order to proceed to arbitration pursuant to the contract was unnecessary here. Sawmill initiated the arbitration, and Mattabassett and Stackhouse filed a counterclaim seek-

ing relief pursuant to the agreement to arbitrate. Although Stackhouse and Mattabassett were not signatories to the contract, their assent to the arbitration proceedings is clearly demonstrated by their conduct. By filing the counterclaim, they joined in Sawmill's request to the arbitrators to resolve their legal disputes as to the purchase and sale contract. This was the functional equivalent of Mattabassett and Stackhouse initially seeking arbitration.

The fact that the nonsigning parties, Stackhouse and Mattabassett, challenge the award here, and a signatory challenged the award in *Schwarzschild*, makes no difference legally. If Sawmill had been seeking to avoid an award in favor of Mattabassett and Stackhouse on the ground that they did not sign, we would have a factual situation on all fours with *Schwarzschild*. It would be illogical to conclude that in that situation the arbitrators would have had authority, and in the present case they do not. This would mean that subject matter jurisdiction would turn on the outcome *of the arbitration*, a proposition that has no support in law or logic. Under the rationale in *Schwarzschild*, the arbitrators have authority and the trial court has subject matter jurisdiction over the application to confirm the award, if at least one of the parties has signed the agreement to arbitrate, and the others have assented to the agreement by their conduct.

In *Bennett* v. *Meader*, supra, 208 Conn. 362, the court discussed the two policy considerations that require the "strict enforcement of the writing requirement in § 52-408." "First, and most apparent, is that this requirement eliminates the problems of proving an oral agreement. It is likely that the parties' understanding of a purported oral agreement to arbitrate will differ. The content of the agreement would then have to be determined by the court and this would not be as efficient or as easy as establishing the existence and con-

tent of a written agreement. The process of proving an oral agreement would not foster the stated purpose of arbitration of avoiding the formalities, delay, expense and vexation of ordinary litigation. . . . Second, because the parties must memorialize their agreement to arbitrate, it also is likely that they will establish, either separately or within the agreement to arbitrate, a written submission setting forth the arbitrable issues." (Citations omitted; internal quotation marks omitted.) Id., 362–63. The court went on to state "[t]hus, requiring a written agreement to arbitrate also encourages the parties to devise a written submission, which will clarify the rights of the parties for the purposes of both arbitration and judicial review." Id., 364.

Both of the policy reasons underpinning the writing requirement of § 52-408, as discussed in *Bennett*, are completely satisfied here. First, the writing itself eliminates any controversy as to what was agreed to by the parties and eliminates the need to prove an oral agreement. There is no dispute that Mattabassett took title to the subject property as the nominee of Boston Realty. The contract provides in its opening paragraph that it is an agreement between Sawmill as the "seller" and Boston Realty *or its nominee* as the "buyer." Section 1 of the contract provides that the buyer "agrees to purchase upon and subject to the terms and conditions hereinafter set forth." One of the terms was the purchase price that the buyer agreed to pay, which included the additional $1,000,000 at issue in the arbitration. When Mattabassett became the buyer under the contract it obligated itself to pay the contract purchase price. In addition, § 7-B of the contract provided for an order of the bankruptcy court authorizing the sale to the buyer "in form and substance satisfactory to buyer and its counsel." The clause also provided that "[s]aid order (or an ancillary order) shall additionally provide, in form and substance, satisfactory to buyer and its

counsel, that said sale shall be made free and clear of all liens and encumbrances upon the property, with all liens and encumbrances to attach to the proceeds of sale to the extent the same are not otherwise paid and released at the time of sale." Mattabassett was entitled to the benefit of this clause.

Mattabassett as the nominee of Boston Realty took advantage of the benefits of the contract. In the event the $1,000,000 addition to the purchase price became due under the contract, Mattabassett could offset that sum by an amount equal to any debt owed by Mooney to Stackhouse. This was certainly a contractual benefit to Mattabassett. Such an offset would extinguish any debt to Stackhouse up to the sum of $1,000,000. By agreeing to the contract by his conduct, Stackhouse became potentially liable for part of the purchase price and thus became a party to the agreement. Indeed, at the time of the transfer of title there was an outstanding indebtedness from Mooney to Stackhouse.

The second policy reason underpinning § 52-408 is that a writing encourages the parties to frame a written submission and that written submission assists the arbitrators and the court. Sawmill apparently did not file a written submission in the trial court, and we do not know if there was such a submission to the arbitrators. A written submission certainly could have been framed with relative ease, thus satisfying this policy basis of § 52-408.

The principles espoused in *Schwarzschild* apply here. There is an agreement to arbitrate in writing as required by § 52-408, it is signed by one of the parties, assent by the nonsigning party is clear and the party challenging the award accepted benefits under the contract. Mattabassett and Stackhouse filed a counterclaim in the arbitration proceedings seeking relief pursuant to the agreement to arbitrate. They then proceeded to

arbitrate the matter over a period of approximately three years. This constituted an acceptance of the benefits of the contract to arbitrate, and estops them from asserting a claim of lack of authority.

We conclude from the signatures of Sawmill and Boston Realty plus the assent of Mattabassett and Stackhouse to the contract and the arbitration proceedings, that the arbitrators did have authority to resolve the issues between the parties. The trial court, therefore, had subject matter jurisdiction.

The judgment is reversed and the case is remanded to the trial court with direction to consider Sawmill's application to confirm the award.

In this opinion the other judges concurred.