[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON PLAINTIFF'S APPLICATION FOR INJUNCTION ENJOINING THE DEFENDANTS FROM COMPELLING THE PLAINTIFF TO ARBITRATE HER CLAIM AGAINST THE DEFENDANT BUILDING REHABILITATIONS, LLC.
This case comes before the court pursuant to a claim filed by the plaintiff against the named defendant for architectural services rendered by the plaintiff to the defendant, Building Rehabilitations, LLC. American Arbitration Association has been named as an additional defendant because it would be the body before which such an arbitration would be held.
 FACTUAL BACKGROUND
On April 24, 1998 the plaintiff sent a proposal to Stewart Beckett in the form of an AIA (American Institute of Architects) standard agreement to do architectural work on property to be acquired by Mr. Beckett on Prospect Avenue in West Hartford.
It should be noted at the outset that Mr. Beckett never acquired the property. It was acquired by Building Rehabilitations LLC, which is solely owned by his wife, Patricia Beckett.
The proposal was rendered in pencil and clearly designated as a "draft". (Exhibit C). The proposal contained an agreement to arbitrate any disputes between the parties as well as a provision for payment of fees pursuant to the AIA.
Several months passed before the plaintiff was contacted by the Becketts' daughter, Suzanne Beckett. As a result she performed some services for Ms. Beckett concerning her proposed tenancy on the property as an attorney.
It wasn't until August of 1998 that Patricia Beckett informed the plaintiff that she was acquiring the building and could not sign any agreement at that time because she was forming an LLC (Limited Liability Company).[1] The plaintiff submitted several AIA form contracts to Ms. CT Page 7649 Beckett for her consideration. Some contained arbitration provisions and some did not.
Plaintiff corresponded with Patricia Beckett and dealt with her regarding services thereafter. Bills sent to Patricia Beckett referred to AIA Standards for payment of those bills.
Plaintiff noted by letter to Patricia Beckett as late as April 23, 1999 that the original proposal of April 23, 1998 "remained unexecuted and that it could serve only as a guide to the scope of architectural and consulting services." (Exhibit N). Plaintiff was terminated by Patricia Beckett by letter dated May 21, 1999. No contract was ever signed. It isn't clear as to which party was responsible for this, but no final contract was ever proposed by the plaintiff.
 ISSUE
Was a written agreement to arbitrate agreed upon between the parties? If so, then the parties must arbitrate their dispute pursuant to General Statutes § 52-408. The statute states as follows:
 An agreement in any written contract, or in a separate writing executed by the parties to any written contract , to settle by arbitration any controversy thereafter arising out of such contract or out of the failure or refusal to perform the whole or part thereof, or a written provision in the articles of association or bylaws of an association or corporation of which both parties are members to arbitrate any controversy which may arise between them in the future, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable and enforceable, except when there exists sufficient cause at law or in equity for avoidance of written contracts generally.
In this case, the draft form agreement sent to Mr. Beckett by the plaintiff was never signed by anyone. The only evidence offered by Patricia Beckett that there was an agreement or acceptance of this agreement was her testimony that she believed Exhibit C (the "contract") was operative.
The defendant argues that the plaintiff's bills sent to the defendant consistently referred to AIA provisions concerning architectural fees which the defendant claims is evidence of an agreement. While conceivably CT Page 7650 this may have been true (although this court does not so find) there is no evidence whatsoever that Patricia Beckett acknowledged to the plaintiff her assent to this provision of the proposed contract or any other provision of it.
 LAW
Connecticut case law has modified the stringent language of § 52-408.
There is no requirement that the written agreement be signed by the parties but only that it be in writing. Schwarzschild v. Martin,191 Conn. 316, 321 (1983).
Further, the statute is satisfied if the parties have manifested their agreement by a means other than a signature on the writing if that assent is clear. This assent to a contract provision may be oral or by actions of the parties. Sawmill Brook Racing Ass'n, Inc. v. Boston RealtyAdvisors, Inc., 39 Conn. App. 444, 454 (1995).
 CONCLUSION
After a review of the evidence in this case this court finds "the facts as follows:
The plaintiff's proposed contract to Stewart Beckett was, at best, an offer to him of a contract containing an agreement to arbitrate. This contract was never signed nor agreed to in any manner by Stewart Beckett according to his own testimony.
There is no claim by the defendant that this contract was "assigned to it nor is there any evidence that Patricia Beckett affirmatively agreed either by acts or words that she accepted all or any part of the contract. Her testimony that she relied on the draft contract (Exhibit C) is rejected as incredible. If Ms. Beckett relied on the contract for fees, why did she disregard it for all other provisions such as notice of termination and other procedures to terminate?
The proposed draft was, perhaps, an offer, but clearly, it was never accepted by either Stewart Beckett, or Patricia Beckett.
Eloise Marino's letter to Patricia Beckett, as late as April 23, 1999 advising Ms. Beckett that the original contract was to serve only as a guide was never challenged by Ms. Beckett.
This court can only conclude that there was never an agreement to arbitrate between these parties in accordance with the statute and case CT Page 7651 law cited.
An order may enter enjoining arbitration in this matter, and this case may proceed to judgment in this court.
Freed, J.