[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] RULING
This trial to the court covered six days, from October 19, 2000 to and including this date, October 27, 2000. For the purpose of this case, there is a unity of interest between the two named Defendants, Marcel Bizier individually and Landmark Investment Limited Partnership, a family limited partnership of which Bizier is General Partner. Accordingly, I will generally refer in this Ruling to the two Defendants in the singular, as the "Defendant."
First, on the issue of whether or not there was an express contract. The law is that parties may indicate their assent to a written contract through their conduct rather than by signing the contract. As the court stated in Sawmill Brook Racing Assn., Inc. v. Boston Realty Advisors,Inc., 39 Conn. App. 444, 451 (1995), quoting with favor fromSchwarzschild v. Martin, 191 Conn. 316, 321-22 (1983):
 "One enjoying rights is estopped from repudiating dependent obligations which he has assumed; parties cannot accept benefits under a contract fairly made and at the same time question its validity. . . . In the absence of a statute requiring a signature . . . parties may become bound by the terms of a contract, even though they do not sign it, where their assent is otherwise indicated, such as by the acceptance of benefits under the contract."
Based on the foregoing criteria and the evidence in this case, the Court finds that an express contract existed, namely the document, however inartistic, dated October 16, 1995 set forth in Exhibit 1. That document was presented to the Defendant on October 16, 1995. The required $25,000 retainer was forthwith paid. Exhibits 2 and 24. The provisions relating to weekly requisitions were consistently complied with, albeit properly based on then known actual costs. Exhibits 9 and 10. The contract date of October 16, 1995 prominently appears on the Contractor's Certificate, Exhibit 3, submitted to Fleet Bank as part of its construction loan closing requirements. The Plaintiff's applications to Fleet for release of progress payments, Exhibits 16 and 26, and presumably all succeeding applications, copies of which were submitted by Fleet to the Defendant along with payment, prominently at the top of the first page state the pertinent contract date as "10/16/95." At no time did the Defendant advise Fleet that this date was not accurate.
It was clear that an integral part of the Exhibit 1 contract was its CT Page 13176 provision for the $25,000 completion "bonus," and that the Plaintiff would have walked away if that provision was not accepted. At the inception the Defendant did not advise the Plaintiff of any objection to Exhibit 1, or that he wished any different provisions. Instead, the Defendant knowingly permitted the Plaintiff immediately to commence work in connection with the project, and to expend time and incur expense in so doing. The individual Defendant is an experienced real estate developer. He knew what he was doing, and the consequences thereof. Has testimony that he did so because he had no time to get a replacement does not hold water. The Defendant led the Plaintiff on and accepted the benefits of the Exhibit 1 contract, and is bound by it.
The Court finds that the Plaintiff has satisfied his burden of proof on his entitlement to the $25,000 completion bonus. The requisite certificates of occupancy were issued in mid-October 1996. Exhibit 5. The Defendant's defenses are without merit. At no time prior to this lawsuit did the Defendant advise the Plaintiff in writing of any construction defects. The Defendant neither defaulted the Plaintiff nor issued any punch list. It is noteworthy that with one minor exception, none of the defects set forth in the now withdrawn counterclaim, or otherwise testified to by or on behalf of the Defendant, have been corrected in the more than four years since the certificates of occupancy issued.
This disposes in favor of the Plaintiff, the First and Second Counts of the operative Amended Complaint dated July 16, 1997.
The next issue concerns the disposition of the Third Count claiming a violation of CUTPA. This is a close call. The evidence could properly be construed as establishing a CUTPA violation.
In determining not to find such a violation, the Court is influenced in part by the Defendant's belated withdrawal of the Counterclaim (October 26, 2000), which was meritless and never should have been brought. However, the Court will entertain an application by the Plaintiff for costs under General Statutes § 52-99 and Practice Book § 10-5, in addition to such other costs to which the Plaintiff is entitled.
The Fifth Count (there is no Fourth Count) of the complaint, alleging unjust enrichment, is moot, as the Court has found the existence of an express contract.
The Court further finds that the Plaintiff is entitled under General Statutes § 37-3a to prejudgment interest on the $25,000 completion bonus from and after the December 5, 1996 (Exhibit 11) demand therefor. This amounts to $2,500 per year, totaling $7,500 for the three years through December 4, 1999, plus $2,236.68 from that date to the present CT Page 13177 date (at $6.84 per day for 327 days), amounting in all to $9,736.68.
Judgment is entered in favor of the Plaintiff and against the Defendants, jointly and severally, in the amount of $25,000 plus $9,736.68 prejudgment interest, totaling $34,736.68, plus allowable costs.[1]
David L. Fineberg Superior Court Judge