[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 1506
This matter is before the court on an application by the plaintiff for a court order to proceed to arbitration, the plaintiff having been employed by the defendant during a portion of 1999.
The relationship between the parties commenced in August of 1999 when the plaintiff was retained by the defendant as an independent contractor to serve as its chief financial officer.
Early in the course of this arrangement, the defendant, through its president, Antonio Rossano, offered the plaintiff full-time employment in the same capacity and a general agreement was reached, with a starting salary of $1,750.00 per week and a raise to $1,850.00 on January 3, 2000.
The plaintiff then prepared a written contract of employment which he submitted to Mr. Rossano. According to the plaintiff, he brought up the subject of a written contract and Mr. Rossano said he should go ahead and draft it.
Mr. Rossano denies this and states that there was no discussion of a written contract until the plaintiff presented him with a draft, Exhibit A.
On September 1, 1999, the plaintiff started to work as an employee and at a meeting that day the proposed contract was discussed. The contract draft contained Paragraph 6.1.1, the arbitration clause at the center of the dispute. Present at the meeting were the plaintiff, Mr. Rossano, and his wife Paula Rossano, secretary-treasurer of the defendant's corporation.
The Rossanos noted their concerns and questions on a copy of the draft (Exhibit B). No notation was made as to Paragraph 6.1.1. The plaintiff put his own comments on another copy of the draft, Exhibit C.
On September 4, 1999, the plaintiff presented to Mr. Rossano a draft he claims incorporated all of the modifications agreed upon (Exhibit D). In this draft, the paragraph dealing with disability insurance was not resolved. The plaintiff either handed this draft to Mr. Rossano or he left it on his deck and he doesn't recall if Rossano said anything about this version of the contract.
On or about November 15, 1999, the plaintiff claims he handed to Mr. Rossano the final draft of the contract (Exhibit E). This draft included his pricing of the disability insurance and a new paragraph, 3.6. This CT Page 1507 dealt with "services relating to the sale of the business" and had never been included in the prior drafts.
Upon receipt of Exhibit E, Mr. Rossano looked at it and handed it back to the plaintiff, saying he didn't need his signature and that it was "a matter of trust" (Rossano's recollection) or "trust me" (Mr. Henries recollection). It is undisputed that the defendant never signed any version of the contract.
In February 2000, the plaintiff was dismissed and upon his demanding arbitration, the defendant advised him no enforceable employment contract provided this avenue.
 ISSUES
The plaintiff claims he should prevail on the grounds that the parties agreed to arbitrate or, in the alternative, that the defendant made a promise to arbitrate that is enforceable under the doctrine of promissory estoppel.
 I
There is no question that these parties did not sign an agreement to arbitrate, but the plaintiff argues that the defendant is bound by the terms of the contract because its "assent is otherwise indicated." (See Schwarzschild v Martin, 191 Conn. 316, 320-322, (1983). However, where, as here, the parties have not signed a written arbitration agreement, the Connecticut Statute (§ 52-408) requires that the assent of the party to be charged is "clear." Sawmill Brook Racing Assn., Inc. v. BostonRealty Advisors, Inc., 39 Conn. App. 444, 454 (1995).
The weaknesses to the plaintiff's claims on this issue are substantial. of particular significance is the plaintiff's own evidence and testimony. The court has before it several versions of the employment contract and several modifications were applied to the original form. The parties were at odds over paragraph 4, dealing with disability. As late as November 14, 1999, the plaintiff presented Exhibit E, the last modified proposed agreement. The letter accompanying that proposal acknowledges the lack of an agreement and presents the employer-defendant with a new paragraph 3.6, dealing with the plaintiff's status should the business be sold. (Discussions along those lines were ongoing).
On cross-examination, the plaintiff admitted he did not expect the defendant to sign the agreement because paragraph 4 had to be worked out. He also admitted paragraph 3.6 was brand new, had not been discussed, and that Mr. Rossano merely skimmed through it and handed it CT Page 1508 back to him. He neither read it nor did he agree to it — in the plaintiff's words. Nor did the plaintiff pursue the signing by the defendant. Finally, he said he was not sure the defendant agreed to the proposed contract!
It is also significant that when he was discharged on February 10, 2000, he did not object and cite the alleged "contract." The court notes that he did not perform his obligations under paragraph 4, suggesting he
didn't even feel it was in effect.
This evidence is consistent with the testimony of both Mr. and Mrs. Rossano. They denied ever having agreed to the arbitration clause and Mr. Rossano indicated it would have to be reviewed by the defendant's lawyer and accountant.
From the totality of the circumstances presented to the court, there is no basis upon which it can be found that the defendant or Mr. Rossano individually clearly assented to any of the plaintiff's proposed contracts. There was no "actual agreement" to support a claim of an implied agreement. See Boland v. Catalano, 202 Conn. 333, 336-7 (1987).
 II
While the court agrees with the defendant that the doctrine of promissory estoppel is not applicable in this case, it will be addressed so that all issues are resolved in this proceeding.
The defendant cites our Supreme Court's decision in D'Ulisse-Cupo v.Board of Directors of Notre Dame High School, 202 Conn. 206 (1987). In that case, the court stated that:
 "A fundamental element of promissory estoppel, therefore, is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance. Thus, a promisor is not liable to a promisee who has relied on a promise if, judged by an objective standard, he had no reason to expect any reliance at all."
In view of the discussion in Section I above, the court concludes that the plaintiff had not shown "the existence of a clear and definite promise" and the argument fails on this point alone.
Putting aside for the sake of argument any statements of Mr. and Mrs. Rossano, the plaintiff's own testimony negates such a conclusion. CT Page 1509
His statement that he didn't expect Mr. Rossano to sign the early drafts because of paragraph 4 certainly precludes reliance on them as "promises." With Exhibit E and the letter of November 14, 1999, the plaintiff said Mr. Rossano did not read it fully, didn't agree with it and gave it back to him.
Any suggestion that the plaintiff was misled by the defendant and went to work relying on some assurance that a contract would be signed is totally without merit because of the plaintiff's admission that he would have gone to work for the defendant without a contract! In fact, he did. And, it should be noted, it was the plaintiff who first brought up the subject of a written contract, after starting his employment. It was the defendant's position that the company did not have them and would not enter into one with a brand new employee. This was imparted to the plaintiff by Mr. Rossano who pointed out to him his key employees lacked such contracts. He did this, he said, so as not to mislead the plaintiff.
One final point on the plaintiff's claim of reliance on the defendant's words or deeds is directed to the claim he could have taken other work, had he realized the defendant was not going to sign the contract. This is a most puzzling stance in view of his total inability to point out the basis for his belief that there was an agreement between the parties! This is particularly relevant to Exhibit E, wherein on November 14, 1999, the plaintiff noted the absence of an agreement and submitted a version with amendments — one concerning the possible sale of the business. And, this is the version of the agreement the plaintiff said Mr. Rossano didn't read, and didn't agree to, but handed it back to him.
 CONCLUSION
The plaintiff having failed to meet his burden of proving assent by the defendant or that promissory estoppel is available to him and is an applicable remedy, the application to compel arbitration is denied. Judgment may enter for the defendant.
Anthony V. DeMayo Judge Trial Referee