## COMMISSIONER OF LABOR *v.* MARY LOU WALL ET AL.
### (AC 21148)

Landau, Schaller and Dupont, Js.

Argued December 11, 2001—officially released April 30, 2002

*Marc P. Mercier*, for the appellants (named defendant et al.).

*Glenn A. Woods*, assistant attorney general, with whom on the brief, were *Edward Reynolds* and *Gary Williams*, assistant attorneys general, and *Richard Blumenthal*, attorney general, for the appellee (plaintiff).

### Opinion

LANDAU, J. The defendants, Mary Lou Wall and Suburban Homes & Condos, Ltd. (Suburban), appeal from the judgment of the trial court awarding $10,633.36 in withheld wages and penalties to five former employees[1] of the defendants and awarding $7500 in attorney's fees to the plaintiff commissioner of labor.[2] On appeal, the

---

[1] The five claimants involved with the present action are Andrew C. Benko, Anita D. Fiore, Frederick S. Grilli, Steven M. Alexander and Alexis R. DeRubertis.

[2] The court rendered judgment in favor of the third defendant, Gary Wall, who is not a party to this appeal. We refer in this opinion to Mary Lou Wall and Suburban as the defendants.

defendants claim that the court improperly (1) held that the parties had not agreed to a policy authorizing up to a 50 percent "back charge" reduction in commissions earned by the claimants, (2) held that two of the individual claimants were entitled to withheld commissions for merely having obtained a buyer or listing, respectively, (3) failed to estop two of the individual claimants from repudiating the existence of the 50 percent "back charge" policy and (4) awarded the plaintiff double damages, attorney's fees and costs pursuant to General Statutes § 31-72.[3] We affirm the judgment of the trial court.

The following facts and procedural history are necessary to our disposition of the defendants' appeal. Wall is a licensed real estate broker and is the owner and operator of Suburban, a real estate firm in Wethersfield. Between February 2, 1995, and May 16, 1997, five former employees of Suburban filed complaints with the labor department, alleging that they had not been paid for all hours worked and that wages in the form of commissions had been withheld from them.[4]

The labor department, after reviewing the defendants' records, determined that a total of $10,612.25 in wages had been withheld from the five claimants in violation of General Statutes §§ 31-71b and 31-71c. Demand for payment was made on the defendants, but they failed to tender payment. On March 30, 1999, the

---

[3] General Statutes § 31-72 provides in relevant part: "When any employer fails to pay an employee wages in accordance with the provisions of [this section] . . . or fails to compensate an employee . . . such employee . . . may recover, in a civil action, twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court . . . . The Labor Commissioner may collect the full amount of any such unpaid wages . . . as well as interest calculated . . . from the date the wages or payment should have been received, had payment been made in a timely manner. . . ."

[4] The five individuals had been employed by the defendants as real estate agents for differing periods from 1989 to 1997.

plaintiff brought an action for unpaid wages and compensation on behalf of the five claimants.[5]

On April 5, 2000, the damages portion of the trial commenced,[6] and the court heard testimony over four days on the issues of the amount, if any, of unpaid compensation due each of the claimants, interest on that sum, and whether the plaintiff could prevail on his claim for double damages and attorney's fees, as provided for in § 31-72. The testimony centered on the particulars of the individual real estate transactions on which the claimants' claims were based, detailing the nature of the work performed by the various participants, as well as the method by which employees were compensated for their work.

The court found that the evidence established that Suburban enforced a "ticket policy" under which agents could negotiate with another agent to cover for them for the purpose of performing a particular, discrete task. Among the types of activities for which a ticket might be assessed were attendance at a preclosing inspection or at the closing itself. Those tickets would result in a charge of between $50 and $100, deducted from the commission due that agent.

Wall also testified that Suburban enforced a "back charge" policy under which an agent who abandoned a transaction, or who could not otherwise follow a sale through to closing, would have 50 percent of the commission due automatically deducted. That half of the commission deducted as a "back charge" would be given to the agent who completed the sale. According to Wall, a back charge would be assessed when the

---

[5] The plaintiff sought double damages in the amount of $21,224.50 as well as reasonable attorney's fees, costs and interest.

[6] The preliminary issue of whether the claimants were employees or, as the defendants argued, merely independent contractors was decided at a separate trial held over three days on September 14, 15 and 16, 1999.

work performed by another agent to effectuate a closing was more significant than the discrete, isolated tasks compensated according to the ticket policy. The court concluded that the evidence did not support a finding that Suburban had such a back charge policy in place.

At the conclusion of the trial, the court rendered judgment for the plaintiff and awarded double damages in the amount of $10,633.36, interest on each commission due calculated at the rate of 1 percent per month and attorney's fees in the amount of $7500 as well as costs. This appeal followed.

I

The defendants' first claim on appeal is that the court improperly held that the parties had not agreed to a system of compensation authorizing up to a 50 percent "back charge" reduction in commissions owed to the claimants. We disagree.

The defendants' claim challenges a factual finding of the court and, accordingly, our review is limited. "The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous. . . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) *Post Road Iron Works, Inc.* v. *Lexington Development Group, Inc.*, 54 Conn. App. 534, 540, 736 A.2d 923 (1999).

In its memorandum of decision, the court stated: "[T]his court finds the so called [back charge] policy was applied so erratically as not to be a policy at all. Sometimes Suburban deducted less than 50 percent of

an agent's commission when he or she left the employ before a transaction was completed . . . sometimes Suburban deducted more than the 50 percent of the commission to which an agent was entitled . . . and sometimes Suburban deducted the entire commission . . . . Obviously, the practice was at the whim of Mary Lou Wall, and she deducted any portion of the commission she chose without any itemization or explanation."

Each of the claimants testified that they were never informed of Suburban's so-called "back charge" policy. Although other former employees testified that the policy was discussed at staff meetings, the court, as the finder of fact, was free to adopt either version of the events. Moreover, the evidence presented at trial supports a finding that the deductions that Suburban charged against an agent's commission followed no hard and fast rule. Reviewing the transactions that are the subject of this action reveals that Suburban, allegedly pursuant to its back charge policy, assessed charges against agents' commissions ranging from 57 percent to 100 percent, and in at least one instance imposed a ticket in lieu of a back charge.

Claimant Andrew C. Benko was the listing agent for 88 Oakdale Street in Wethersfield. The parties agreed that that agent's share of the total commission generated was $1150. Of that amount, Suburban retained $500 and paid Benko $650. With respect to another transaction, the sale of 4 Brentwood in Windsor, Wall testified that although a 50 percent back charge would have been appropriate pursuant to Suburban's alleged policy, Benko was assessed a ticket for $250.[7]

Claimant Steven M. Alexander was the selling agent for 222 West Main Street in Plainville. He secured a contract of sale for the property on January 22, 1997,

[7] The total agent's commission on the sale of 4 Brentwood was $2116, and Benko was paid $1766.

and left Suburban's employ on February 6, 1997. Wall testified that to bring the transaction to a close, the financing on the property had to be changed and that she had to get a commitment from the seller to repair various problems with the plumbing. Wall testified that the change in the property's financing resulted in an additional $300 charge, which the agency paid. Although Wall claimed to have assessed the standard 50 percent back charge against Alexander's commission on the transaction, the claimant received only $300 out of a total commission of $1200. Wall testified that she deducted an additional $300 from Alexander's commission to compensate the agency for its costs in correcting what she characterized as Alexander's failure to do his job. In the case of two other claimants, Alexis R. DeRubertis and Anita D. Fiore, Suburban withheld the entire commission due them on particular sales.[8]

The court concluded that "there was no fixed policy at all, but rather the agreement between Suburban and its employees applied to the effect that Suburban was entitled to retain a reasonable portion of an agent's commission share to cover the costs of closing properties that were the subject of contracts of sale entered into prior to an agent leaving but not settled until after he or she left." Because the evidence presented at trial supports the court's conclusion, we cannot say that its conclusion was clearly erroneous. Therefore, that conclusion must stand.

## II

The defendants next claim that the court improperly held that two of the claimants, DeRubertis and Fiore, were entitled to commissions for merely having obtained a buyer and listing, respectively. We disagree.

The controversy between the parties essentially relates to the point at which an agent has performed

---

[8] The details of those two transactions are discussed in part II.

sufficient work toward effectuating a sale that she is entitled to share in the commission on the closing of that sale. That presents the court with a question of fact, and "the court's conclusion must stand unless it is contrary to or unsupported by the facts, or is in conflict with logic or reason, or violates the applicable rules of law." *Pitt* v. *Kent*, 149 Conn. 351, 356, 179 A.2d 626 (1962).

The two transactions at issue with respect to the defendants' claim are the sale of 9 Rosewood Lane, Bloomfield (DeRubertis), and 29 Robin Brook Drive, Newington (Fiore). Neither DeRubertis nor Fiore received any commission from the respective sales of those properties.

The buyer of 9 Rosewood Lane was a referral brought into the office by DeRubertis. DeRubertis testified that she spent a significant amount of time showing the client properties in Bloomfield, writing contracts for various properties that the client was interested in, including the contract for 9 Rosewood Lane, and generally developing a rapport with the client. DeRubertis also testified on cross-examination that although Suburban's agents were not paid directly for any of those disparate tasks, payment for such tasks was wrapped into the commission earned at the time of closing on a property. It is undisputed that the buyer closed on the property.

Wall testified that although DeRubertis had negotiated the original contract for the sale of the property, the entire contract had to be renegotiated and that consequently, the deal negotiated by DeRubertis effectively ceased to exist, and the closing reflected an entirely new deal in which DeRubertis had no part. Despite Wall's assertions regarding the extent of the alterations to the contract necessary to close the deal, those subsequent changes simply were noted on the

contract originally prepared by DeRubertis; no new document was drafted. Wall also testified that subsequent to the claimant's departure, she was required to visit the property for inspections between four and six times. Wall could not, however, recall the specific purpose of those visits.

The court was free to evaluate the testimony of the witnesses as to the extent of additional work required to close the sale and the reasonableness of any apportionment of the commission. On the basis of the testimony presented at trial, we can not conclude that the court's finding that DeRubertis should have received some compensation for her efforts was clearly erroneous.

Fiore listed 29 Robin Brook Drive on May 4, 1994. The contract for the property was signed on September 1, 1994, and Fiore left Suburban on September 7, 1994. Fiore testified that the listing agent's primary responsibility subsequent to obtaining the listing was to conduct open houses at the property. Once an offer on the property was made, the buyer's agents would be responsible for conducting inspections and arranging for financing. At that point, the listing agent's primary tasks simply were to monitor the process to ensure that it was moving forward and to attend the closing to receive the commission check.

Wall's testimony indicated that a more significant amount of work was necessary to close on the property following Fiore's departure. She testified that among other tasks that needed to be completed, it was necessary for her to renegotiate the sales price because it would not have been possible for the buyers to get financing under the deal as structured.

Regardless of the actual effort necessary to effectuate the sale of the property following Fiore's departure, the evidence supported the court's finding that Fiore was

entitled to some commission by virtue of being the listing agent. Indeed, Suburban actually had paid the claimant some commission on two other transactions for which she had acted as the listing agent and which closed after she had left the defendants' employ. Just as she had in those other transactions, DeRubertis had obtained a contract for the sale of 29 Robin Brook Drive prior to leaving Suburban. One of the defendants' own witnesses testified that once a property closed, an agent would be entitled to at least some commission for merely having obtained the listing. That position is supported by the express terms of the employment contract itself. The employment agreement states that an agent earns a commission for the listing of a property once that property is sold and that if such closing occurs after the agent has left the agency, then the agency may retain an amount reasonable given the circumstances.

The court's findings were derived from the evidence presented at trial, and that evidence is sufficient to support the conclusion that Fiore was entitled to at least some commission on the particular sale. Accordingly, we find that the court's conclusion in that regard was not clearly erroneous.

## III

The defendants next claim that the court improperly failed to estop two of the individual claimants, Frederick S. Grilli and Alexander, from challenging the 50 percent "back charge" policy. The defendants base that claim on allegations that the claimants had personally benefited from the "back charge" policy that they now repudiate.[9]

---

[9] With respect to Grilli, the defendants rely on his acceptance of 50 percent of the commission due on the sale of 2360 Main Street, Rocky Hill, a transaction that was initiated by another agent and assigned to him by Wall as a result of that agent's unavailability, to support the conclusion that he ratified the alleged "back charge" policy. The defendants make the same claim with respect to Alexander on the basis of his acceptance of 50 percent of the commission due on a transaction abandoned by another Suburban agent

Whether the party claiming estoppel has proved the necessary elements to establish an estoppel involve questions of fact that we review under the clearly erroneous standard. *Middlesex Mutual Assurance Co.* v. *Walsh*, 218 Conn. 681, 699, 590 A.2d 957 (1991). To successfully assert an estoppel defense based on the ratification of a contract by the acceptance of the benefits of that contract, the terms of the contract must be established. See *Sawmill Brook Racing Assn., Inc.* v. *Boston Realty Advisors, Inc.*, 39 Conn. App. 444, 450, 664 A.2d 819 (1995). Although agreement to a compensation arrangement may be inferred by looking to the conduct of the parties, we cannot say that in the case before us, the parties' conduct supports the conclusion that the claimants had ratified the alleged "back charge" policy.

The claimants' claims are consistent with their testimony regarding the manner in which commissions were divided within the office, both generally and with respect to the individual transactions on which the defendants base their estoppel defense. The claimants do not dispute that in the specific instances cited by the defendants, they received 50 percent of another agent's commission as a result of their efforts in bringing a property to close. They do dispute, however, that such division was pursuant to an established "back charge" policy as opposed to a general practice of apportioning commissions "reasonably" between the participating agents on an ad hoc basis.

Without having first established the necessary factual predicates that the defendants themselves were operating in accordance with the alleged "back charge" policy and that the claimants actually were informed that they were being compensated pursuant to such a

and assigned to him by Wall. Wall testified that those cases were assigned to the respective claimants with specific reference to the alleged "back charge" policy.

policy, the defendants cannot successfully assert an estoppel against the claimants on the basis of the ratification of an agreement. Accordingly, we conclude that the defendants have failed to satisfy their burden of establishing the existence of the elements essential to an estoppel and that the court's failure to find an estoppel in favor of them was not clearly erroneous.

IV

The defendants' fourth and final claim is that the court improperly awarded double damages and attorney's fees. We disagree.

General Statutes § 31-72 provides for the discretionary award of double damages and attorney's fees in unpaid wage cases. Our case law has established that such an award is appropriate where there is evidence of bad faith, arbitrariness or unreasonableness. *Butler* v. *Hartford Technical Institute, Inc.*, 243 Conn. 454, 470, 704 A.2d 222 (1997); *Sansone* v. *Clifford*, 219 Conn. 217, 229, 592 A.2d 931 (1991). The defendants argue that the court cannot make a finding of bad faith, arbitrariness or unreasonableness where the amount of commission due to an employee at the time of that employee's termination was not clearly identifiable because of a disagreement between the parties as to the method of computing such compensation. In support of their argument, the defendants cite *NYCONN Data Systems* v. *Cottrell*, Superior Court, judicial district of New Haven at Meriden, Docket Nos. CV950242202, CV950247574 (January 17, 1996), and *Hardy* v. *Saliva Diagnostic Systems, Inc.*, 52 F. Sup. 2d 333 (D. Conn. 1999).[10] Although the finding of the court with respect

[10] We note that although Superior Court opinions are not binding on us, they may be persuasive. *L & R Realty* v. *Connecticut National Bank*, 46 Conn. App. 432, 438, 699 A.2d 291 (1997), rev'd on other grounds, 246 Conn. 1, 715 A.2d 748 (1998). Similarly, "[a]lthough an interpretation of our state statutes by a federal court may be persuasive authority, it . . . is not binding on [the Appellate Court]." *In re Michaela Lee R.*, 253 Conn. 570, 602, 756 A.2d 214 (2000).

to the defendants' conduct is a question of fact, whether such a finding is precluded where the evidence establishes a bona fide disagreement between the parties about the method of compensation presents a question of law over which our review is plenary.

Each of the cases cited by the defendants is distinguishable from the case at bar because neither one involved a situation in which the employer arbitrarily enforced the very policy that it claimed governed employee compensation. Moreover, the *Hardy* court did not conclude that it could not have found that the employer had acted in bad faith, arbitrarily or unreasonably. Rather, it simply declined to make such a finding independently in light of the plaintiff's failure to request a jury interrogatory on the issue and the existence of a bona fide dispute between the parties as to whether the plaintiff was actually entitled to the wages awarded. *Hardy* v. *Saliva Diagnostic Systems, Inc.*, supra, 52 F. Sup. 2d 340–41.

In contrast to the cases cited by the defendants, the court here found that the defendants' withholding in fact had been motivated not by a good faith belief that they were acting in accordance with the terms of the employment agreement, but rather by mere whim and caprice.[11] The court's finding that Wall's deductions and

[11] The court found as follows: "In this case, the court finds that Suburban did act arbitrarily and unreasonably in withholding the portion of commissions to which the claimants were entitled. It applied its own purported 50 percent back charge policy erratically and arbitrarily, and it made deductions from [the] claimants' commissions without justification. Moreover, it gave no details of the deductions made. In several instances, it exaggerated the amount of work Suburban did after a claimant left. In other instances, the deductions had no relationship to the amount of work done by Suburban. In still other cases, it denied a commission entirely. The court finds that Suburban deliberately deprived the claimants [of] a fair share of the commissions due them and persistently acted in bad faith. Thus, the court concludes that the claimants are entitled to twice the amount of the commissions due them."

withholdings were arbitrary was supported by the testimony presented at trial. Given that factual finding by the court, we conclude that the award of double damages was a reasonable exercise of the court's discretion pursuant to § 31-72.

The judgment is affirmed.

In this opinion the other judges concurred.