******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CATHEDRAL GREEN, INC. *v.* DOROTHY
HUGHES ET AL.
(AC 38469)

DiPentima, C. J., and Prescott and Mullins, Js.

*Syllabus*

The plaintiff landlord sought, by way of a summary process action, to obtain
possession of an apartment that it had rented to the defendant tenant.
The plaintiff and the defendant entered into a stipulated judgment pursu-
ant to which the court rendered a judgment of possession in favor of
the plaintiff and a stay of execution. In accordance with the stipulated
judgment, the plaintiff agreed to allow the defendant and her minor
child to remain in the apartment during the stay provided that, inter
alia, the defendant no longer allow the child's father, M, a nonparty to
the lease who previously had resided in the apartment and allegedly
sold drugs there, to enter the premises, and that the defendant call
the police should M enter the premises in the defendant's presence.
Subsequently, the plaintiff sought an order of execution on the ground
that M was seen on the premises with the defendant's knowledge and
acquiescence. The evidence demonstrated that M was in the defendant's
apartment and that he was recorded by a security camera following the
defendant into the apartment. The trial court granted the plaintiff's
request for an order of execution, finding that the defendant wilfully
violated the stipulated judgment. On appeal to this court, the defendant
claimed that the trial court improperly had relied on facts that were
not in evidence or that were not supported by the record, and failed to
properly adjudicate the defendant's equitable nonforfeiture defense.
*Held*:

1. The defendant failed to demonstrate that the trial court's material factual
findings were clearly erroneous: this court could not conclude, in light
of its review of the record, that the trial court impermissibly inferred
that the plaintiff had encountered problems involving M's presence on
the premises or that the stipulation was not entered into in light of
those problems; moreover, allowing for all reasonable inferences, the
court's description of the events depicted in the photographs from the
security camera was not clearly erroneous, and, to the extent that there
was any misstatement by the court regarding those events, it was harm-
less in light of the other undisputed evidence establishing that M was
observed in the defendant's apartment with her knowledge and consent
and that she never called the police to report his presence.

2. The trial court having applied the three part test established in *Fellows*
v. *Martin* (217 Conn. 57) for determining whether a defendant is entitled
to equitable relief from forfeiture of a tenancy, it recognized and applied
the correct legal standard in considering the defendant's equitable non-
forfeiture defense.

3. The trial court properly found that the defendant's breach of the stipulated
judgment was wilful, the evidence having demonstrated that the defen-
dant knowingly, voluntarily, and deliberately allowed M to be on the
premises; the defendant never disputed that she invited M to her apart-
ment, that she initially tried to hide his presence from other residents,
and that she knew his presence was in violation of the stipulated judg-
ment, and photographs from the security camera showed the defendant
permitting M to enter the premises.

Argued March 28—officially released July 18, 2017

(Appeal from Superior Court, judicial district of
Hartford, Housing Session, Woods, J. [judgment]; Hon.
Joseph H. Pellegrino, judge trial referee [request for
execution]; Rubinow, J. [motion for use and
occupancy].)

*Procedural History*

Summary process action brought to the Superior Court in the judicial district of Hartford, Housing Session, where the defendant William Moore was defaulted for failure to appear; thereafter, the court, *Woods, J.*, rendered judgment of possession for the plaintiff and stayed execution in accordance with the parties' stipulated agreement; subsequently, the court, *Hon. Joseph H. Pellegrino*, judge trial referee, granted the plaintiff's request for execution of the judgment and granted an equitable stay of execution to the named defendant, and the named defendant appealed to this court; thereafter, the court, *Rubinow, J.*, granted the named defendant's motion for use and occupancy. *Affirmed.*

*Sally R. Zanger*, with whom was *Katrina R. Cessna*, for the appellant (named defendant).

*James P. Sexton*, with whom were *Matthew C. Eagan* and, on the brief, *Michael H. Clinton*, for the appellee (plaintiff).

*Opinion*

PRESCOTT, J. The present appeal arises from a summary process action that initially was settled in November, 2014, by way of a stipulated judgment. In accordance with that stipulation, the court rendered a judgment of possession in favor of the plaintiff, Cathedral Green, Inc., execution of which it stayed through the end of January, 2017. During the stay, the plaintiff agreed to allow the defendant, Dorothy Hughes, and her minor child to remain in the defendant's apartment provided that, inter alia, the defendant no longer allow William Moore, her child's father and a nonparty to the lease, to have access to the premises, which included both the apartment and the common areas of the property.[1] The defendant now appeals from the trial court's postjudgment ruling of October 5, 2015, in which the court found that the defendant wilfully had violated the terms of the stipulated judgment. As a result, the court ordered execution of the judgment of possession.[2] The defendant claims on appeal that the court improperly (1) relied upon facts that were not in evidence or that were not supported by the record, and (2) failed to adjudicate properly the defendant's equitable nonforfeiture defense.[3] We disagree and affirm the judgment of the trial court.

The following facts, which the court either set forth in its decision or are undisputed, and procedural history are relevant to our resolution of the defendant's claims. The defendant is a single mother who resides with her minor daughter in a subsidized apartment that is part of a housing complex, Cathedral Green, owned and operated by the plaintiff. In June, 2014, the plaintiff commenced the underlying action seeking to evict the defendant on the ground that she violated the terms of her lease. In particular, the plaintiff alleged that the defendant had allowed Moore to reside in the apartment despite the fact that he was not an authorized occupant under the lease. Further, the plaintiff alleged that Moore had "been coming and going on several occasions using the defendant's keys to enter the premises and has a lot of visitors meeting him briefly at the premises on several occasions during the day and night to transact illegal drug sales." According to the plaintiff, the defendant failed to cure the lease violations after she was notified of them by the plaintiff.

On November 25, 2014, the date set for the summary process trial, the parties, each of whom was represented by counsel, filed a joint motion for a stipulated judgment, which was accepted by the court, *Woods, J.* According to the parties' stipulation, the defendant agreed to pay reasonable use and occupancy payments going forward, and to repay $890 in unpaid rent in accordance with a repayment plan the parties agreed to "work out" by the end of the following month and to present to the court as a modification of the parties'

stipulated agreement. The stipulation also provided that the defendant agreed to abide by all of the terms, rules, and conditions contained in the original lease with the plaintiff except as specifically modified by the terms of the stipulation.

Of particular relevance to the present appeal, the defendant agreed in the stipulated judgment to the following: "[S]he shall not allow or permit [Moore] to enter her unit or accompany her in the common areas of the property, including all outside areas and the parking lot. The defendant agrees that [Moore] is a trespasser and both Catholic Family Charities and [the Department of Children and Families] agree that [Moore] should not be allowed on the plaintiff's premises. As such, [the] defendant shall have an affirmative obligation to call the police should he enter the premises or the common areas in her presence. Further, the defendant agrees that if [Moore] is to visit the defendant's minor daughter, the visit or transfer shall occur off of the plaintiff's premises, including the common areas, driveway and parking lots. [The defendant] agrees that [the] plaintiff may treat [Moore] as a trespasser and call the police to keep him off of the premises." If the defendant was able to make all payments, as agreed, and to comply with all the other conditions of the stipulation, the plaintiff agreed to reinstate her as a tenant in good standing "on the earlier of the first day of the second month following full payment or February 1, 2017, but in no event sooner than December 31, 2015."

On July 27, 2015, however, the plaintiff filed an affidavit with the court noting the defendant's noncompliance with the terms of the stipulated judgment and seeking an order of execution. The affidavit, signed by the plaintiff's property manager, Crystal Wise, stated that, despite the defendant's promise not to allow Moore on the premises, Moore had been observed "coming and going into the defendant's apartment and on the premises with the [defendant's] knowledge and acquiesce[nce]."

The court scheduled a hearing on the plaintiff's request for execution, which took place on September 8, 2015. At that hearing, the court heard testimony from the defendant; Wise; Kimberly May-Bailey, the director of community services at Catholic Charities, which oversees program services provided to some of Cathedral Green's tenants;[4] and Michelle Simon, a senior family specialist at Catholic Charities assigned to Cathedral Green.

May-Bailey testified that she and Simon observed Moore on the premises on July 9, 2015, after the stipulated judgment was in effect. She recounted that they were in the office at Cathedral Green when they received a phone call from a tenant regarding an issue at the playground. The women found the defendant's daughter at the playground unattended and escorted

her back to the defendant's apartment because children were not supposed to play at the playground unattended. At that time, May-Bailey and Simon observed Moore inside the defendant's apartment with the defendant. When they confronted the defendant with the fact that his presence violated the stipulation, the defendant indicated that she was preparing Moore a birthday dinner. The women alerted the property manager of Moore's presence.

Wise testified regarding photographs that were taken from security camera video footage which showed Moore following the defendant into the premises on July 3, 2015. Wise was familiar with Moore and could identify him in the photographs because of an encounter she had with him in early June, 2015, when he attempted to enter the premises allegedly to deliver a birthday present and she was alerted by a maintenance worker and asked him to leave. The court admitted three of the five photographs into evidence.

In her own testimony, the defendant acknowledged that she had signed the stipulated agreement in this matter with the assistance of an attorney, who had advised her regarding the terms of the agreement. She never informed her attorney that she did not understand the agreement. She admitted that the defendant was in her apartment with her on July 9, 2015. She never disputed that she had been preparing Moore a dinner for his birthday or suggested that he had shown up at the apartment uninvited. She also admitted that he was on the premises on other dates, including on July 3, 2015, when he followed her into the building, and that she had never, at any time, called the police to have him removed from the premises.

The court granted the defendant's request to file a posthearing brief, with a reply from the plaintiff to follow. The defendant filed her brief on September 15, 2015, and the plaintiff filed its reply on September 23, 2015.

In her posttrial memorandum, the defendant argued that the doctrine of equitable nonforfeiture should bar dispossession in this case because, even if the defendant violated the stipulated judgment, the harm to the defendant and her child in losing their rent-subsidized housing and the attendant stability it afforded far outweighed any harm to the plaintiff, which harm she characterized as being limited to the inconvenience of having to make phone calls to the police to keep Moore off of the premises.

The plaintiff took the position that the court was bound to enforce a validly rendered stipulated judgment and that, because the evidence demonstrated that the defendant had violated the agreement, the plaintiff was entitled to execution as a matter of law. With respect to the equitable nonforfeiture defense, the plaintiff argued

that a balancing of all the equities actually favored the plaintiff. Further, it argued that the harm caused by the defendant's wilful violations of the stipulated agreement went beyond simply the harm and inconvenience to the plaintiff, and included potential harm to other tenants in allowing a trespasser and alleged drug dealer onto the premises.

On October 5, 2015, the court, *Hon. Joseph H. Pellegrino*, judge trial referee, issued a memorandum of decision granting the plaintiff's request for an order of execution, finding that the defendant wilfully had violated the stipulation by continuing to allow Moore on the premises and by failing to call the police as she had agreed to do. The court considered and rejected the defendant's equitable defense, finding, on balance, that the various factors did not weigh in favor of the defendant. Although it overruled the defendant's objection to an order of execution, it granted an equitable stay until January 1, 2016, in order to give the defendant time to secure new living arrangements for herself and her child. This appeal followed.

I

The defendant first claims that the court's decision improperly relied upon facts that were not in evidence or that were not supported by the record. The plaintiff counters that the facts challenged by the defendant were not dispositive of the issue before the court and, thus, even if there was some error with regard to the disputed findings, it was harmless. We conclude that the defendant has failed to demonstrate that any of the court's material factual findings were clearly erroneous.

We begin by setting forth our standard of review, which is well settled. "If the factual basis of the court's decision is challenged, our review includes determining whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Internal quotation marks omitted.) *Juliano* v. *Juliano*, 96 Conn. App. 381, 385, 900 A.2d 557, cert. denied, 280 Conn. 921, 908 A.2d 544 (2006).

The defendant first takes issue with the court's statement that the parties agreed to the stipulation "[i]n light of the problems that the plaintiff has encountered with [Moore] . . . ." The defendant contends that the record is silent as to why the parties decided to agree on the stipulation and that there was no evidence of any actual problems involving Moore, only the unsubstantiated allegations in the plaintiff's summary process complaint. The defendant argues that the court simply assumed that the allegations in the complaint, particularly the allegations of drug dealing on the premises, were true, "despite the execution of a stipulated agreement that means that the parties decided not to

test the allegations of the complaint."

The court, however, never stated at the hearing or in its written decision that it was treating the allegations in the summary process complaint as true. The court never references any particular allegation from the complaint. The court's reference in its memorandum to "problems" is more properly understood in the context of the preceding finding that those managing the housing complex did not want Moore on the premises. The defendant does not challenge that finding, which is clearly supported by the record. Moreover, the defendant seems to ignore that, in the stipulation, the defendant acknowledges that Moore was a trespasser on the premises, which status alone would have provided a sufficient basis for the court to describe his presence as a "problem" for the plaintiff. The court, however, never elaborated regarding the reasons for the plaintiff not wanting Moore on the property. In fact, when the plaintiff's attorney referenced Moore's alleged drug dealing during his argument, the court clearly indicated that that was an issue that was not before the court and that there was no evidence before the court regarding those allegations.

Certainly, in its role as the trier of fact, the court was permitted to draw any reasonable factual inference from the evidence, whether direct or circumstantial. In light of our review of the record as a whole, we cannot conclude that the court impermissibly inferred that the plaintiff had encountered problems involving Moore's presence on the premises or that the stipulation was not entered into "in light of" those problems. The defendant's suggestion that the court's statement was somehow clearly erroneous and also so relevant that it tainted the court's consideration of the issues before it simply lacks any merit.

The defendant also takes issue with the court's finding that "[t]here were pictures from security videos, introduced by [Wise], that show [Moore] entering the building and *the defendant holding the door for him to enter*." (Emphasis added.) The defendant argues that none of the photographs entered into evidence actually shows the defendant "holding the door" for Moore. We conclude that, allowing for all reasonable inferences, the court's description of the events depicted in the photographs was not clearly erroneous, and, to the extent that there was any misstatement, it was harmless in light of the other undisputed evidence establishing that, on a separate date, Moore was observed in the defendant's apartment with her knowledge and consent and that she never called the police seeking Moore's removal from the premises at any time. Furthermore, whether she held the door open for Moore on that particular date or simply let him enter behind her was only marginally relevant to the material issue before the court.

The two photographs at issue were marked as plaintiff's exhibits four and five. They each contained date and time stamps. It is undisputed that exhibit four shows the defendant at the front door of the building with Moore following close behind. The next photo, taken less than three seconds later, shows Moore nearly at the door, which is now swung wide open. Given the short period of time that elapsed between the two photos, and the fact that no one else is shown between the defendant and Moore, it is not unreasonable to infer that the defendant was either holding the door open or was aware that Moore was close behind and entering the premises. The defendant herself testified that Moore was on the premises with her knowledge on July 3, 2015, the date the photographs were taken.

Even if we agreed with the defendant that the court's finding was clearly erroneous, which we do not, the defendant cannot demonstrate that the court's specific finding that she held the door open played a significant role in the court's decision that the defendant had violated the terms of the stipulated judgment, and, thus, any error was harmless. After all, the testimony of Simon and May-Bailey, each of whom testified regarding Moore's presence in the defendant's apartment for a birthday dinner, is far more damaging.

The remainder of the defendant's arguments in support of this claim are equally unavailing and warrant no further discussion. In sum, we are utterly unconvinced that the court's decision was rendered on the basis of clearly erroneous factual findings, and, if any misstatements exist, they were immaterial to the court's analysis of the issues before it and, thus, harmless.

II

The defendant also claims that the court failed to adjudicate properly her defense of equitable nonforfeiture. Although there are several aspects to the defendant's claim, we need address only two.[5] First, we consider whether the court failed to apply the correct legal standard. Second, we address whether the court improperly determined that the defendant's breach of the stipulation was wilful. We conclude that the court both applied the correct legal framework and properly exercised its discretion by rejecting the defendant's equitable defense.

We begin by setting forth the applicable standards of review and legal principles relevant to the defendant's equitable nonforfeiture defense. To the extent that the defendant challenges whether the court chose and applied the correct legal standard in addressing her equitable defense, this raises a question of law over which our review is plenary. See *Mirjavadi* v. *Vakilzadeh*, 310 Conn. 176, 183, 74 A.3d 1278 (2013) ("[i]t is well established that [t]he . . . determination of the proper legal standard in any given case is a question

of law subject to our plenary review" [internal quotation marks omitted]). Any challenge to how the court exercised its equitable authority, however, is entitled to considerable deference. "We employ the abuse of discretion standard when reviewing a trial court's decision to exercise [or not exercise] its equitable powers. . . . Although we ordinarily are reluctant to interfere with a trial court's equitable discretion . . . we will reverse [if] we find that a trial court acting as a court of equity could not reasonably have concluded as it did . . . or to prevent abuse or injustice. In reviewing claims of error in the trial court's exercise of discretion in matters of equity, we give great weight to the trial court's decision. . . . [E]very reasonable presumption should be given in favor of its correctness. . . . The ultimate issue is whether the court could reasonably conclude as it did." (Citations omitted; internal quotation marks omitted.) *Presidential Village, LLC* v. *Phillips*, 325 Conn. 394, 407, 158 A.3d 772 (2017).

In determining whether a defendant is entitled to equitable relief from forfeiture of a tenancy, our Supreme Court has reiterated that courts should look to the test arising from its decision in *Fellows* v. *Martin*, 217 Conn. 57, 66–67, 584 A.2d 458 (1991). See *Presidential Village, LLC* v. *Phillips*, supra, 325 Conn. 406–407. In *Fellows*, the court clarified that, under Connecticut law, "equitable defenses and counterclaims implicating the right to possession are available in a summary process proceeding."[6] *Fellows* v. *Martin*, supra, 62. The court in *Fellows* also made clear, however, that "[a] court of equity will apply the doctrine of clean hands to a tenant seeking such equitable relief; thus, a tenant whose breach was 'wilful' or 'grossly negligent' will not be entitled to relief." Id., 67.

Accordingly, *Fellows* established that an equitable nonforfeiture defense can succeed only if "(1) the tenant's breach was not [wilful] or grossly negligent; (2) upon eviction the tenant will suffer a loss wholly disproportionate to the injury to the landlord; *and* (3) the landlord's injury is reparable." (Emphasis added.) *Cumberland Farms, Inc.* v. *Dairy Mart, Inc.*, 225 Conn. 771, 778, 627 A.2d 386 (1993), citing *Fellows* v. *Martin*, supra, 217 Conn. 66–67. This enumerated test, formulated from the holding in *Fellows*, is stated in the conjunctive, and, therefore, the failure of any prong of that test means that equitable relief is unavailable. See *Presidential Village, LLC* v. *Phillips*, supra, 325 Conn. 410–11 (reversing trial court's granting of equitable relief to tenant because court engaged in improper balancing of harm under prong two); see also *BNY Western Trust* v. *Roman*, 295 Conn. 194, 207 n.11, 990 A.2d 853 (2010) (limiting appellate review to one element of conjunctive test); *Berzins* v. *Berzins*, 105 Conn. App. 648, 654, 938 A.2d 1281 (same), cert. denied, 289 Conn. 932, 958 A.2d 156 (2008). The burden of establishing an equitable defense in a summary process action falls on the party

asserting that defense. See, e.g., *Lynwood Place, LLC* v. *Sandy Hook Hydro, LLC*, 150 Conn. App. 682, 690, 92 A.3d 996 (2014) (holding summary process defendant had burden of proving its equitable defense of laches.)

A

Turning to the defendant's arguments, to the extent that she suggests that the trial court failed to apply the correct legal standard in considering her equitable defense, we reject that aspect of her claim. As the defendant correctly sets forth in her brief, the standard that applies is well settled. As set forth previously, the legal framework discussed in *Fellows* and the aforementioned three part test are the applicable legal standards that a court must apply in considering a properly raised claim of equitable nonforfeiture in a summary process action. The court did so in this case.

In its memorandum of decision, the court clearly identifies that the defendant sought to have it exercise its equitable powers to prevent a forfeiture by the defendant under the facts of this case. The court cites to *Fellows* and indicates that it must consider the wilfulness of the defendant's breach, whether an eviction would cause disproportionate injury to the defendant when compared to the plaintiff's injury, and whether any injury to the plaintiff is reparable. Although the court discusses in limited detail only the first and last elements, it clearly states that, in reaching its decision, it considered all of the equitable factors argued by the defendant. The defendant has not shown otherwise. See *Equity One, Inc.* v. *Shivers*, 310 Conn. 119, 132, 74 A.3d 1225 (2013) (noting presumption that court of general jurisdiction acts "only after due consideration, in conformity with the law and in accordance with duty" [internal quotation marks omitted]). Accordingly, on the basis of the record before us, we conclude that the court both recognized and applied the proper legal standard in this case.

B

Finally, the defendant argues that the court improperly found that her breach of the stipulated judgment was wilful. We are not persuaded, and, as previously stated, our resolution of this issue is dispositive of the remainder of the defendant's claim regarding her equitable nonforfeiture defense.

"Whether a party's conduct is wilful is a question of fact. . . . The term has many and varied definitions, with the applicable definition often turn[ing] on the specific facts of the case and the context in which it is used." (Citation omitted; internal quotation marks omitted.) *Saunders* v. *Firtel*, 293 Conn. 515, 530, 978 A.2d 487 (2009). "As we previously have observed . . . wilful has been defined ranging from 'voluntary; knowingly; deliberate . . . [i]ntending the result which actually comes to pass; designed; intentional; purposeful;

not accidental or involuntary' to '[p]remeditated; malicious; done with evil intent, or with a bad motive or purpose, or with indifference to the natural consequences.' " Id., 530–31. Wilful misconduct has also been defined as intentional conduct that is "deemed highly unreasonable or indicative of bad faith." Id., 531.

With respect to whether the defendant's breach of the stipulation was wilful, the court stated as follows: "[T]he court finds that the evidence is clear that the defendant wilfully violated the stipulation. She invited [Moore] to her apartment for a birthday party . . . . Furthermore, the video evidence presented at trial is further evidence that [the defendant] allowed [Moore] to be on the premises without calling the police, in violation of the written stipulation." Those findings, along with our review of the record as a whole, fully support the court's determination that the defendant wilfully violated her agreement under the stipulation to "not allow or permit [Moore] to enter her unit or accompany her in the common areas of the property, including all outside areas and the parking lot."

The defendant was represented and assisted by counsel when she signed the stipulation. She testified that her counsel went over the terms of the stipulation with her and that she never told her attorney that she did not understand what was in the agreement. Although she also testified that she did not fully understand her duties under the stipulation, the trial court was not required to credit that testimony. Furthermore, her alleged lack of understanding was belied by her testimony that she had instructed Moore that he was not allowed on the premises and that she was in the process of obtaining a restraining order against Moore. The defendant never disputed that she invited Moore to her apartment on his birthday to cook him dinner, and it can be reasonably inferred from the fact that she and Moore initially tried to hide his presence from Simon and May-Bailey that she knew his presence was in violation of the stipulation and that she sought to avoid being caught. Nor was the birthday dinner an isolated incident as evidenced by the photographs showing the defendant permitting Moore to enter the premises on a prior occasion. The defendant thus knowingly, voluntarily, and deliberately allowed Moore to be on the premises despite her promise not to allow him in her apartment or the common areas. The defendant has failed to demonstrate that the court improperly determined that her violation of the stipulation was wilful, which finding alone was a sufficient basis for denying her equitable relief.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Moore also was named as a defendant in the underlying summary process complaint, but he never filed an appearance with the trial court, which rendered a default judgment against him indicating that he never had any right or privilege to occupy the premises. Moore never filed an appeal from

the summary process judgment, nor has he participated in the present appeal. Accordingly, we refer to Hughes as the defendant throughout this opinion and to Moore by name.

[2] Although ordinarily an appeal will not lie from an execution issued in a summary process action because the execution merely effectuates the judgment of possession and, thus, is not itself an appealable order or judgment; see *Iannotti* v. *Turner*, 32 Conn. Supp. 573, 575, 346 A.2d 114, cert. denied, 169 Conn. 709, 344 A.2d 357 (1975); we construe the present appeal as more analogous to a challenge to the summary enforcement of a judgment, which, even in the case of a stipulated judgment, we have found constitutes an appealable final judgment. See *Bernet* v. *Bernet*, 56 Conn. App. 661, 664, 745 A.2d 827, cert. denied, 252 Conn. 953, 749 A.2d 1202 (2000).

[3] For clarity and ease of discussion, we have combined and reordered the claims as they are set forth in the defendant's brief.

[4] According to May-Bailey's uncontested testimony, Cathedral Green is a twenty-eight unit facility composed of fourteen "service enriched" units funded by the state to provide special services to families in need, and fourteen other units that are designated as affordable housing. The defendant lived in one of the affordable housing units.

[5] Because we conclude that the court properly found that the defendant wilfully breached the stipulated judgment, and because that finding is dispositive of whether the defendant established her entitlement to equitable relief, we need not address the defendant's other arguments, namely, whether the court improperly balanced the relative harm of the parties or whether it improperly determined that the breach of the stipulated judgment was not reparable.

[6] "Although originally articulated in the context of the nonpayment of rent, the doctrine of equitable nonforfeiture may be applicable in evictions arising from violations of other lease terms." *Presidential Village*, *LLC* v. *Phillips*, supra, 325 Conn. 407.