******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# HOUSING AUTHORITY OF THE CITY OF STAMFORD *v.* PAULINE SINGLETON ET AL.
## (AC 47982)

Cradle, C. J., and Alvord and Westbrook, Js.

*Syllabus*

The plaintiff appealed from the trial court's judgment of possession for the defendant tenant on count one of the seven count complaint in the plaintiff's summary process action. The plaintiff claimed, inter alia, that the court failed to render a decision with respect to the remaining counts of the complaint, which contained independent grounds for eviction. *Held*:

This court dismissed the appeal for lack of subject matter jurisdiction, as the trial court rendered an express judgment only as to count one of the complaint and, pursuant to *Meribear Productions, Inc.* v. *Frank* (328 Conn. 709), the trial court's ruling on count one did not implicitly resolve the remaining counts of the complaint, all of which alleged legally consistent theories that, if proven, would support eviction of the defendant, and, thus, the appeal was not taken from a final judgment.

Argued April 15—officially released July 15, 2025

*Procedural History*

Summary process action, brought to the Superior Court in the judicial district of Stamford-Norwalk, Housing Session at Norwalk, where the defendant Jason John Faust was defaulted for failure to appear; thereafter, the case was tried to the court, *Cirello, J.*; judgment of possession for the named defendant; subsequently, the court, *Cirello, J.*, denied the plaintiff's motion to reargue, and the plaintiff appealed to this court. *Appeal dismissed.*

*John A. Farnsworth*, with whom were *Robert L. Rispoli* and *G. Adam Schweickert*, for the appellant (plaintiff).

*Jane Kelleher*, with whom were *Madeleine Anderson* and, on the brief, *Matthew Haine*, for the appellee (named defendant).

*Opinion*

WESTBROOK, J. In this summary process eviction action, the plaintiff, the Housing Authority of the city of Stamford doing business as Charter Oak Communities, appeals from the judgment of possession rendered by the trial court in favor of the defendant Pauline Singleton on the basis of her special defense of equitable nonforfeiture.[1] The plaintiff claims that the court improperly (1) failed to render a decision with respect to counts two through seven of its complaint, which contained independent grounds for eviction;[2] (2) determined with respect to count one that the defendant had proven her special defense of equitable nonforfeiture; (3) failed to recognize that equitable nonforfeiture was inapplicable as a matter of law because "federal law is controlling regarding the relevant portions of the subject lease"; and (4) concluded that the defendant had proven her special defense of equitable nonforfeiture "as a factual matter." Because we conclude that the court failed to dispose of all counts of the complaint brought against the defendant and, thus, that the appeal was not taken from a final judgment, we dismiss the appeal for lack of subject matter jurisdiction.

---

[1] Jason John Faust, an additional occupant of the subject premises, was also named as a defendant in the underlying action. Faust was defaulted for failure to appear and is not a participant in the present appeal. Accordingly, all references to the defendant throughout this opinion are to Singleton.

[2] The court's purported failure to dispose of all counts of the complaint directed at the defendant raises "jurisdictional alarm bells" as to whether the court rendered an appealable final judgment and, thus, whether the present appeal is jurisdictionally defective. *Clinton* v. *Aspinwall*, 344 Conn. 696, 698, 281 A.3d 1174 (2022); see also Practice Book §§ 61-2 through 61-4. Accordingly, prior to oral argument, we asked the parties to file supplemental briefs addressing whether the court's judgment of possession in favor of the defendant on count one of the complaint implicitly also disposed of the remaining counts brought against the defendant pursuant to *Meribear Productions, Inc.* v. *Frank*, 328 Conn. 709, 723–24, 183 A.3d 1164 (2018). See id. (holding that court's disposition of one count may implicitly dispose of other counts premised on "legally inconsistent, but not legally consistent, alternative theories").

The following facts, which either were found by the trial court or are undisputed in the record, and procedural history are relevant to our disposition of this appeal. In October, 2012, the defendant entered into a lease with the plaintiff for an apartment at Stamford Manor, a federally subsidized low income public housing complex in Stamford. The defendant subsequently allowed her nephew, Jason John Faust, to live with her in the apartment.[3] Faust was not a party to the lease nor was he listed on the lease as a family member of the defendant who would be occupying the premises.[4]

In December, 2022, Faust sold drugs to undercover Stamford police officers.[5] As a result, the police searched the defendant's apartment and discovered various illegal drugs,[6] a scale, packaging materials and cash. Faust was arrested and charged with possession of a controlled substance, sale of narcotics, possession of narcotics with intent to sell, and operation of a drug factory. Shortly thereafter, he was arrested a second time for selling narcotics.[7] The defendant was unaware

___

[3] Faust told the police that he was the defendant's nephew, and the court refers to Faust as the defendant's nephew in its decision. We note, however, that, in the defendant's posttrial brief to the court, she stated that Faust is "not blood related" but nonetheless was "considered . . . part of her family."

[4] Section 1 of the lease identifies the parties to the lease and provides in relevant part: "It is agreed and understood that occupancy under the terms of this lease is limited to the Tenant and his or her family as named above. Unauthorized occupancy of the leased premises or any portion thereof is a serious breach of this lease, which may lead to Tenant's eviction."

[5] According to the plaintiff, a police investigation into Faust had "started due to a fentanyl overdose death by another resident of Stamford Manor . . . and the police had credible information tying that death to [Faust]."

[6] The police recovered powder cocaine, crack cocaine, fentanyl, alprazolam pills, and oxycodone pills.

[7] Faust pleaded guilty in August, 2024, to operating a drug factory in violation of General Statutes § 21a-277 (c). See *State* v. *Faust*, Superior Court, judicial district of Stamford, Docket No. CR-22-0249158-S. Faust was sentenced to six years of incarceration, and his maximum release date is November 22, 2028.

that Faust was selling illegal drugs out of her apartment or storing them there.

On March 27, 2023, following Faust's arrests, the plaintiff served the defendant and Faust with notices to quit possession of the apartment. On May 4, 2023, the plaintiff commenced the underlying eviction action. The complaint contained seven counts alleging the following grounds for eviction. Count one alleged that the defendant breached the lease by allowing Faust to reside in the apartment without the permission of the plaintiff and by allowing Faust "to engage in criminal activity on the premises involving suspected drug use and sales . . . ." Count two alleged that the defendant and Faust "have conducted themselves in a manner that violated General Statutes § 47a-11 (g) by . . . disturb[ing] the neighbors' peaceful enjoyment of the premises."[8] Count three alleged that the defendant and Faust violated § 47a-11 (g) because their conduct constituted a nuisance pursuant to General Statutes § 47a-32[9] in that their conduct substantially interfered with the comfort or safety of other tenants or occupants of Stamford Manor. Count four alleged that the defendant and Faust violated § 47a-11 (g) because their conduct amounted to a "serious nuisance" under General Statutes § 47a-15 (C) in that it "present[ed] an immediate and serious danger to [others'] safety." Count five alleged that the defendant and Faust "have conducted themselves in a manner that constitutes a serious nuisance" under §§ 47a-11 (g) and 47a-15 (D) by allowing

[8] General Statutes § 47a-11 (g) provides in relevant part that "[a] tenant shall . . . conduct himself and require other persons on the premises with his consent to conduct themselves in a manner that will not disturb his neighbors' peaceful enjoyment of the premises or constitute a nuisance, as defined in section 47a-32, or a serious nuisance, as defined in section 47a-15 . . . ."

[9] General Statutes § 47a-32 defines "nuisance" as including, but not limited to, "any conduct [that] interferes substantially with the comfort or safety of other tenants or occupants of the same or adjacent buildings or structures."

the apartment "to be used for . . . the illegal sale of drugs or, in the case of a housing authority, using any area within 1500 feet of any housing authority property in which the tenant resides for the illegal sale of drugs."[10] Counts six and seven were directed against Faust only and alleged, respectively, that he took possession of the apartment "without lease, permission, right or privilege to occupy the same" and that any possessory right or privilege he may have acquired under an agreement with the defendant had terminated.

The defendant filed an answer to the complaint on May 30, 2023. She raised three special defenses. Her first and second special defenses invoked the doctrine of equitable nonforfeiture pursuant to which "[e]quitable principles" can prevent an eviction if "(1) the tenant's breach was not [wilful] or grossly negligent; (2) upon eviction the tenant will suffer a loss wholly disproportionate to the injury to the landlord; and (3) the landlord's injury is reparable." (Internal quotation marks omitted.) *Boccanfuso* v. *Daghoghi*, 337 Conn. 228, 239–40, 253 A.3d 1 (2020); see also *Presidential Village, LLC* v. *Phillips*, 325 Conn. 394, 407, 158 A.3d 772 (2017) (although originally articulated as defense to evictions for nonpayment of rent, doctrine of equitable nonforfeiture may be applicable in eviction actions arising from violations of other lease terms). The defendant's third special defense provided that "[a]ny alleged breach of the lease or tenant obligations under Connecticut General Statutes has been timely cured."

After a number of continuances, the matter was tried in June, 2024. In her posttrial brief, the defendant argued

_____

[10] General Statutes § 47a-15 defines "serious nuisance" as, inter alia, "conduct which presents an immediate and serious danger to the safety of other tenants or the landlord, or . . . using the premises or allowing the premises to be used for . . . the illegal sale of drugs or, in the case of a housing authority, using any area within fifteen hundred feet of any housing authority property in which the tenant resides for the illegal sale of drugs."

that Faust's drug sales were not connected to her apartment because Faust had "walk[ed] to the adjacent park" in order to carry them out.[11] Moreover, she asserted that she "was unaware that [Faust] was involved in illegal drug related criminal activity" and that "she thought [Faust] was going to the store for her to buy Epsom salts" when he left the apartment to conduct one of the sales to the undercover police officer. Finally, the defendant argued that, if evicted, she would lose her federally subsidized apartment and become homeless and that such results "would be wholly disproportiona[te] to the harm sustained by the plaintiff . . . ." Specifically, she asserted that any harm suffered by the plaintiff was no more than the "general adverse effect [that] drugs have on our communities" and, therefore, the "enormous loss she would suffer is wholly disproportionate to the injury to the plaintiff" such that the court should render a judgment of possession in her favor.

In its posttrial brief, the plaintiff argued that the defendant's ignorance of Faust's activities was irrelevant to whether she had violated the terms of her lease and, also, that the doctrine of "equitable nonforfeiture is inapplicable [in this case] and an end run around federal law." Furthermore, the plaintiff argued that the harm to it, the greater community, its residents, and its employees would far outweigh any harm to the defendant.

The plaintiff also highlighted that, as part of settlement negotiations with the defendant, it had offered her the opportunity to transfer to one of the plaintiff's other properties and agreed to withdraw the eviction action if she moved. The defendant, however, purportedly rejected this offer, and, according to the plaintiff,

---

[11] There was testimony that the park was within 1500 feet of the apartment complex.

she should not be able "to reject an incredibly reason-able compromise aimed at keeping her in subsidized housing and then complain [in support of her equitable nonforfeiture defense] that she is inequitably being ejected from public housing . . . ." According to the plaintiff, the sale of narcotics, especially fentanyl, posed a very grave risk to the public, including death, and "[e]ven a single instance of unauthorized occupancy or drug related criminal activity is enough to cause irreversible and lasting harm to a community . . . . Significant and lasting harm has been visited on [the plaintiff] and its staff and other residents at Stamford Manor as a result of the defendant's actions (or inac-tions) and those of [Faust]." Finally, the plaintiff reiter-ated that "[t]he defense of equitable nonforfeiture is inapplicable" because "it is preempted by federal law" and because, in light of the federal government's public policy "prohibit[ing] . . . the manufacture, sale, distri-bution, use, or possession of controlled substances in public housing . . . [t]here can be no countervailing equities when [that] cardinal offense in housing has taken place in a government subsidized community . . . ."

On August 22, 2024, the court, *Cirello, J.*, issued a decision rendering a judgment of possession in favor of the defendant with respect to count one of the com-plaint. The court initially found "that the defendant violated the terms of her lease agreement and, as such, the plaintiff has *proved the allegations in count one of its complaint* by a preponderance of the evidence."[12] (Emphasis added.) In particular, the court specified that the defendant had breached §§ 7 (a) and 9 (a) (1) and (2) of the lease prohibiting unauthorized persons

---

[12] The court expressly stated that Faust's illegal activities violated § 1; § 7 (a), (b), (c), (d) and (f); § 9 (a) (1), (2), (3), (5), (10), (11) (i) and (ii) and (13); and § 13 (b) (1) and (2) (i) and (ii) of the lease, as well as §§ 2 and 20 of the plaintiff's Rules and Regulations of Tenancy.

from occupying the premises as well as violating the plaintiff's regulations, the prohibition on use of the premises for any illegal purpose, and the plaintiff's "zero tolerance" policy for "drug related criminal activity" as set forth in §§ 7 (c) and (d) and 9 (a) (11) of the lease. The court also found that the defendant had breached §§ 7 (c) and 9 (a) (10) of the lease requiring her and her guests not to impair the safety or quiet enjoyment of other tenants. Without mentioning or discussing the remaining counts of the complaint, the court stated that it would "turn to the defendant's second special defense, which makes equitable arguments."

The court went on to describe the defendant as "a four foot, eleven inch, sixty-seven year old frail woman who is on Social Security disability. She has severe arthritis and cannot walk without assistance. She needs a double hip replacement and is currently receiving housing assistance, which would be put in jeopardy if evicted from these premises." The court found that the defendant's breach of the lease "was not wilful or grossly negligent" and that she "had no idea her nephew Faust was selling drugs out of her apartment or storing drugs in her apartment." The court further found that, "[u]pon eviction, the [defendant] will suffer a loss wholly disproportionate to the injury to the [plaintiff]" because she was, essentially, facing potential homelessness, "which would be devastating to [her] in her current physical condition." In contrast, the court found that the plaintiff "demonstrated no ascertainable loss if the defendant is allowed to remain" because it presented no evidence that "occupancy rates will decrease or that [the plaintiff] suffered a monetary loss." The court concluded: "For the above noted reasons, the court finds that the plaintiff proved each and every element of count one of its complaint, but the defendant also proved her second special defense for equitable

relief. As such, judgment of possession shall enter in favor of the defendant."

The plaintiff filed a timely motion to reargue in which it raised essentially the same claims it now raises on appeal, including that the court ruled only on count one of the complaint. It requested, inter alia, that "the court rule on the second through seventh counts of the complaint." The court denied the motion, stating in its brief order that the plaintiff had failed to demonstrate that the original decision contained any alleged inconsistencies or misapprehension of the facts, or overlooked a claim that should have been addressed or a principle of law that would have controlling effect. This appeal followed.

The plaintiff's first claim on appeal is that the court improperly rendered a judgment of possession in favor of the defendant without considering and rendering a decision with respect to counts two through seven of its complaint, which contained independent grounds for eviction.[13] This claim, by implication, raises whether

---

[13] To the extent that the plaintiff maintains that no judgment was rendered on the sixth and seventh counts of the complaint, which were directed against Faust only, we conclude that the court effectively rendered judgment in favor of the plaintiff on all counts brought against Faust when it unconditionally granted the plaintiff's motion that asked the court to default Faust for failure to appear and for a judgment of possession against him. In other words, no further adjudication of counts six and seven is necessary. Even if that were not the case, Faust is incarcerated and no longer in possession of the property, and therefore no practical relief can flow from any remand for adjudication of the sixth and seventh counts. See *U.S. Bank National Assn.* v. *Doe*, 203 Conn. App. 218, 219, 247 A.3d 672 (2021) ("[b]ecause the record reveals that the defendants are no longer in possession of the property, this appeal is moot"); see also *Housing Authority* v. *Lamothe*, 225 Conn. 757, 763–64, 627 A.2d 367 (1993) ("[s]ummary process appeals are particularly susceptible to becoming moot . . . [in light of the] well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction" (citation omitted; internal quotation marks omitted)). Accordingly, our discussion regarding the final judgment issue is limited to counts two through five, the only remaining counts brought by the plaintiff against the defendant.

the present appeal was taken from an appealable final judgment due to the court's having purportedly rendered an express judgment only as to count one of the complaint, which, in turn, implicates the subject matter jurisdiction of this court. See *Meribear Productions, Inc.* v. *Frank*, 328 Conn. 709, 717, 183 A.3d 1164 (2018) (*Meribear*) ("the lack of a final judgment is a jurisdictional defect that [necessitates] . . . dismissal of the appeal" (internal quotation marks omitted)); see also footnote 2 of this opinion.

In response to our request for supplemental briefing on this threshold jurisdictional issue, the defendant argues that the court's judgment in her favor on count one implicitly also disposed of counts two through five because she had raised her defense of equitable nonforfeiture, on which the court found she had prevailed with respect to count one, as to all counts against her. Therefore, the defendant asserts, the underlying judgment of possession in her favor constitutes an appealable judgment from which the plaintiff was entitled to appeal. The plaintiff counters that, because all counts of the complaint asserted against the defendant were not adjudicated, including as to the applicability of any equitable defense raised by the defendant with respect to those counts, the court did not render an appealable final judgment. Because we agree with the plaintiff that there are as yet unresolved counts of the complaint, we dismiss the appeal for lack of a final judgment.[14]

[14] Because we dismiss the appeal for lack of subject matter jurisdiction, we cannot and do not reach the merits of the remaining issues raised by the parties on appeal, including whether the doctrine of equitable nonforfeiture is applicable to and should bar eviction with respect to the unresolved counts of the complaint. See *Heyward* v. *Judicial Dept.*, 159 Conn. App. 794, 799, 124 A.3d 920 (2015) ("[i]f there is no final judgment, we cannot reach the merits of the appeal" (internal quotation marks omitted)); *Jay* v. *A & A Ventures, LLC*, 118 Conn. App. 506, 517, 984 A.2d 784 (2009) ("equitable determinations that depend on the balancing of many factors are committed to the sound discretion of the trial court" (internal quotation marks omitted)). Nothing in this opinion should be construed as suggesting any particular outcome with respect to the unresolved counts.

We begin our discussion with well settled legal principles. "The jurisdiction of the appellate courts is restricted to appeals from judgments that are final. . . . The policy concerns underlying the final judgment rule are to discourage piecemeal appeals and to facilitate the speedy and orderly disposition of cases at the trial court level. . . . The appellate courts have a duty to dismiss, even on [their] own initiative, any appeal that [they lack] jurisdiction to hear. . . .

"A judgment that disposes of only a part of a complaint is not a final judgment . . . unless the partial judgment disposes of all causes of action against a particular party or parties . . . or if the trial court makes a written determination regarding the significance of the issues resolved by the judgment and the chief justice or chief judge of the court having appellate jurisdiction concurs. . . .

"Alternatively, the courts may deem interlocutory orders or rulings to have the attributes of a final judgment if they fit within either of the two prongs of the test set forth in *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). . . . Under *Curcio* . . . interlocutory orders are immediately appealable if the order or ruling (1) terminates a separate and distinct proceeding or (2) so concludes the rights of the parties that further proceedings cannot affect them. . . . The first prong of the *Curcio* test . . . requires that the order being appealed from be severable from the central cause of action so that the main action can proceed independent of the ancillary proceeding. . . . If the interlocutory ruling is merely a step along the road to final judgment then it does not satisfy the first prong of *Curcio*. . . . The second prong of the *Curcio* test focuses on the nature of the right involved. It requires the parties seeking to appeal to establish that the trial court's order threatens the preservation of a right already secured to them and that that right will be irretrievably lost

and the [parties] irreparably harmed unless they may immediately appeal. . . . Thus, a bald assertion that [the appellant] will be irreparably harmed if appellate review is delayed until final adjudication . . . is insufficient to make an otherwise interlocutory order a final judgment. One must make at least a colorable claim that some recognized statutory or constitutional right is at risk." (Citations omitted; internal quotation marks omitted.) *Heyward* v. *Judicial Dept.*, 159 Conn. App. 794, 799–801, 124 A.3d 920 (2015).

It is well established that, "[u]nder Connecticut law, a judgment that disposes of only a part of a complaint is not final, unless it disposes of all of the causes of action against the appellant." (Internal quotation marks omitted.) *Clinton* v. *Aspinwall*, 344 Conn. 696, 704, 281 A.3d 1174 (2022); see also Practice Book §§ 61-2 and 61-3. In certain situations, however, a trial court's *express* disposition of one count can also *implicitly* dispose of other counts not directly addressed by the court in rendering the judgment on appeal. In such cases, a final judgment problem does not exist because all counts effectively have been resolved.

The leading case discussing this aspect of our final judgment jurisprudence is *Meribear Productions, Inc.* v. *Frank*, supra, 328 Conn. 709. In *Meribear*, our Supreme Court stated that, "[i]n assessing whether a judgment disposes of all of the causes of action against a party, this court has recognized that the trial court's failure to *expressly* dispose of all of the counts in the judgment itself will not necessarily render the judgment not final. Rather, the reviewing court looks to the complaint and the memorandum of decision to determine whether the trial court explicitly *or implicitly* disposed of each count." (Emphasis in original.) Id., 718. Our Supreme Court recognized that cases in which a plaintiff has raised alternative theories of recovery by way of multiple counts generally fall within two distinct categories.

Id., 721. The first category "involves counts alleging claims that are legally inconsistent, also referred to as mutually exclusive, such that establishing the elements of one precludes liability on the other[15] . . . . In such cases, it is fair to infer that a judgment in favor of the plaintiff on one count *legally* implies a judgment in favor of the defendant on the other count." (Citations omitted; emphasis in original; footnote added.) Id., 721–22. "The second category involves claims that present alternative theories of recovery for the same injury, but are not legally inconsistent. In such cases, there is no legal impediment to the trier of fact finding that the plaintiff has established both claims, although the plaintiff can recover only once for the same injury. . . . In such cases, when the court has found in favor of the plaintiff on one count, this ruling does not imply as a matter of fact or law whether the plaintiff has established the defendant's liability under the other count." (Citations omitted.) Id., 722–23.

After discussing relevant case law and the purpose and policy considerations underlying our final judgment rule, our Supreme Court concluded: "[W]hen the trial court disposes of one count in the plaintiff's favor, such a determination implicitly disposes of legally inconsistent, but not legally consistent, alternative theories. *When a legally consistent theory of recovery has been litigated and has not been ruled on, there is no final judgment.*" (Emphasis added.) Id., 723–24.[16]

---

[15] By way of example, counts sounding in breach of contract and promissory estoppel are legally inconsistent or mutually exclusive. This is because, whereas a plaintiff must prove the formation of a contract to recover on a theory of breach of contract, recovery for promissory estoppel is limited to circumstances in which an otherwise enforceable contract was not formed, often due to lack of consideration. See *Meadowbrook Center, Inc.* v. *Buchman*, 149 Conn. App. 177, 194, 90 A.3d 219 (2014).

[16] It is worth repeating our Supreme Court's admonition in *Meribear* that "whenever feasible, the far better practice would be for the trial court to fully address the merits of all theories litigated, even those that are legally inconsistent." *Meribear Productions, Inc.* v. *Frank*, supra, 328 Conn. 724.

Applying *Meribear* to the present case, we conclude that the court's judgment was not final for purposes of appellate review. The court concluded that the plaintiff had proven its allegations in count one by a preponderance of the evidence. The plaintiff's complaint, however, raised four additional counts directed at the defendant, each alleging a legally distinct ground for eviction, albeit relying largely on the same underlying set of operative facts. Prevailing or not prevailing on any one count would not necessarily preclude recovery on another. Whereas count one alleged violations of the terms of the lease, counts two through five alleged various statutory violations pursuant to §§ 47a-11 (g), 47a-15 and 47a-32. These additional counts fall squarely within the second category discussed in *Meribear* because they involve legally consistent theories of recovery that, although litigated by the parties, were not ruled on by the court.

Moreover, we do not agree with the defendant that we can infer from the trial court's conclusion that the defendant's equitable forfeiture defense barred the plaintiff from prevailing on count one of the complaint that it necessarily means that the court implicitly found against the plaintiff on the remaining counts. "In determining whether a defendant is entitled to equitable relief from forfeiture of a tenancy . . . courts should look to the test . . . in *Fellows* v. *Martin*, 217 Conn. 57, 66–67, 584 A.2d 458 (1991). . . . In *Fellows*, the [Supreme Court] clarified that, under Connecticut law, equitable defenses and counterclaims implicating the right to possession are available in a summary process proceeding. . . . The court in *Fellows* also made clear, however, that [a] court of equity will apply the doctrine of clean hands to a tenant seeking such equitable relief; thus, *a tenant whose breach was wilful or grossly negligent will not be entitled to relief.* . . . Accordingly, *Fellows* established that an equitable nonforfeiture

defense can succeed only if (1) the tenant's breach was not [wilful] or grossly negligent; (2) upon eviction the tenant will suffer a loss wholly disproportionate to the injury to the landlord; and (3) the landlord's injury is reparable. . . . This enumerated test, formulated from the holding in *Fellows*, is stated in the conjunctive, and, therefore, the failure of any prong of that test means that equitable relief is unavailable. . . . The burden of establishing an equitable defense in a summary process action falls on the party asserting that defense." (Citations omitted; emphasis altered; footnote omitted; internal quotation marks omitted.) *Cathedral Green, Inc.* v. *Hughes*, 174 Conn. App. 608, 620–21, 166 A.3d 873 (2017).

The court's analysis under the second and third prongs of the *Fellows* test, which requires the court to weigh the defendant's potential losses against those of the plaintiff and determine whether any loss to the plaintiff is reparable, arguably would be substantially the same regardless of the precise nature of the violation alleged as the basis for eviction. Even if we were to assume this to be true, however, the court still would need to analyze as to each of the unresolved counts whether the plaintiff had proven the statutory violation asserted and, if so, whether such violation was wilful or grossly negligent. In addition, the court would need to consider and resolve the plaintiff's arguments regarding whether equitable nonforfeiture is available as a defense as to the statutory counts.

Finally, we note that the court's partial judgment does not fit within either of the two prongs of the test set forth in *State* v. *Curcio*, supra, 191 Conn. 31. As to the first prong, in light of our conclusion that there are unresolved counts, the court's judgment cannot be viewed as terminating a separate and distinct proceeding. As to the second prong, because the issue of possession remains unresolved, the court's judgment did not

so conclude any rights of the parties that further proceedings cannot affect them. Additionally, neither party has argued that they will suffer irreparable harm if appellate review is delayed until there is a final adjudication of all counts.

In short, we agree with the plaintiff that, in accordance with *Meribear*, the court's ruling on count one of the complaint, including its acceptance of the defendant's equitable defense, did not implicitly resolve counts two through five, all of which alleged legally consistent theories that, if proven, would support eviction of the defendant.

The appeal is dismissed.

In this opinion the other judges concurred.